IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER DIAWARA** *et al.*, *Plaintiffs* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **UNITED STATES**, *Defendant* | : : : | **No. 18-3520** |

## MEMORANDUM

PRATTER, J.                                                                                                             OCTOBER 22, 2020

Plaintiffs Jennifer and Alpha Diawara, and their two children, J.D. and R.D., were in a car accident with a United States Postal Service driver. Plaintiffs seek relief under the Federal Tort Claims Act for injuries they allege that they suffered as a result of that accident. The Government admits that the driver was negligent, and the only issues left for trial are whether the driver's negligence caused Plaintiffs' injuries and, if so, what damages are appropriate. In anticipation of trial in this matter, which has been postponed for the foreseeable future, Plaintiffs filed three motions *in limine* (Doc. No. 57) and the Government filed seven (Doc. No. 54). The Court resolves each in turn.

### LEGAL STANDARD

The Court has inherent authority to manage the cases pending before it. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Hence, the Court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). A motion *in limine* "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). It may also be appropriate for the

1

Court to consider a motion *in limine* when it is more efficient to rule prior to trial and the pretrial motion facilitates more thorough briefing than would likely be available during the course of trial. *Japanese Elec.*, 723 F.2d at 260. Even so, if the context of trial would provide clarity, the Court may defer the issues until trial. *Id.*

The Court discusses the parties' motions *in limine* in turn.

## I. Plaintiffs' Motion *in Limine* No. 1 to Exclude Dr. Merkler's Testimony

Plaintiffs move to exclude Dr. Merkler's testimony citing a variety of legal doctrines, namely Pennsylvania's "*Mudano* rule" and Rules 403 and 702 of the Federal Rules of Evidence. Plaintiffs argue that Dr. Merkler's testimony is inadmissible under each of these rules because it contradicts and is cumulative of the testimony of Dr. Lefkoe, another of the Government's experts.[1] Dr. Merkler is a neurologist and his focus is on Mrs. Diawara's chronic degenerative disc disease and other neurological ailments. Dr. Lefkoe is an orthopedic surgeon, and his opinion focuses on the injury to Mrs. Diawara's right shoulder. Plaintiffs argue that the reports are cumulative because Dr. Merkler reviewed and commented on the same medical history as Dr. Lefkoe. Plaintiffs also argue that, in addition to his opinion concerning Mrs. Diawara's shoulder, Dr. Lefkoe could have rendered an opinion on Mrs. Diawara's neurological deficits because "orthopedic surgeons like Dr. Lefkoe routinely make neurological assessments in treating their patients." (Doc. No. 57 at 4). Had he done so, Plaintiffs argue that having Dr. Merkler testify would be cumulative.

The Government doubtless appreciates Plaintiffs' laudatory assessment of Dr. Lefkoe's capabilities. But even if Dr. Lefkoe might have been able to include an opinion on Mrs.

---

[1] Plaintiffs also argue that Dr. Merkler's opinion should be excluded because it contradicts the findings of the Post Office's investigation. Because Plaintiffs' second motion *in limine* more squarely raises the issue of what effect the Post Office's investigation has on the present litigation, the Court will consider that issue below.

2

Diawara's degenerative disc disease and other neurological ailments, that does not mean that the two opinions are cumulative. One relies on neurology, the other on orthopedics. Dr. Lefkoe may be proficient in the former, but he is offered as an expert in the latter. It is entirely possible that if the Government asked an orthopedic surgeon to render an opinion more suited to an expert in neurology, Plaintiffs would now be bringing a *Daubert* challenge. In any event, it is each party's prerogative to decide the most suitable division of labor between its experts. As the two opinions focus on distinct specialties and injuries, the opinions are not cumulative.

Nor is there a contradiction between the opinions.[2] Plaintiffs point to the fact that Dr. Merkler stated that Mrs. Diawara did not suffer any injury as a result of the collision, while Dr. Lefkoe states her shoulder was injured but that it has now healed. But these opinions are not contradictory. Dr. Lefkoe's report takes no position on whether Mrs. Diawara's shoulder injury was sustained during the collision, or is due to a prior injury (as Defendants allege). Dr. Lefkoe only states that regardless of the true source of her shoulder injury, it has now been resolved. Dr. Merkler and Dr. Lefkoe therefore agree that Mrs. Diawara is not permanently disabled. And even if there was an inconsistency between these opinions, it is easily explained by the fact that each expert was focused on different types of injuries, namely neurological and musculoskeletal injuries, respectively. Accordingly, the Court denies Plaintiffs' first motion *in limine*.

---

[2] Pennsylvania's *Mudano* rule cited by Plaintiffs states that if a party offers two experts who contradict each other, neither expert's testimony is admissible. *See Mudano v. Phila. Rapid Transit Co.*, 137 A. 104 (1927). The Government argues that the *Mudano* rule does not apply because, under *Erie*, federal procedural law governs in federal court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Because the Court finds that Dr. Merkler's testimony does not contradict Dr. Lefko's, it is unnecessary to decide whether Pennsylvania's apparently long lasting *Mudano* rule applies in federal court.

3

## II. Plaintiffs' Motion *in Limine* No. 2 to Preclude the Government from Arguing That Mrs. Diawara is Not Disabled

In essence, Plaintiffs' second motion *in limine* argues that dicta in a prior opinion's background section stating that the Social Security Administration ("SSA") found that Mrs. Diawara was fully disabled prevents the Government from now arguing that she is not fully disabled. This argument has no merit, regardless of whether it is styled as law of the case, collateral estoppel, or Rule 702 of the Federal Rules of Evidence.

First, the SSA's 2019 decision does not estop the Government from arguing that Mrs. Diawara is not totally disabled. For collateral estoppel to apply, a court must find that: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247-48 (3d Cir. 2010) (quoting *Szehinskyj v. Attorney Gen. of the United States*, 432 F.3d 253, 255 (3d Cir. 2005)). Plaintiff's chief problem is that the SSA hearing did not consider an "identical issue." The SSA inquires only whether a claimant will be unable to "engage in any substantial gainful activity . . . for a continuous period of not less than 12 months." 42 U.S.C. § 426(d)(1)(A). In this case, the parties will seek to demonstrate what Mrs. Diawara's likely medical condition is for the rest of her life, not merely whether she was disabled until at least May 22, 2020 (twelve months from the date of the SSA's decision). Where the SSA's definition of disability differed from the case at bar, courts have repeatedly refused to give that determination preclusive effect. *See, e.g., Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 286-87 (D.C. Cir. 1995) (SSA finding on disability not given preclusive effect because it was based on a different standard for disability); *Horton v. Hartford Life Ins. Co.*, 570 F. Supp. 1120, 1121-22 (N.D. Miss. 1983) (same). If anything, this

4

case presents an even less compelling case for preclusion because Mrs. Diawara need not even show that she is "disabled," only that she suffered some harm warranting damages.

Even if the issues were identical, collateral estoppel also requires that the party being precluded be fully represented in the prior action. But the United States was not fully represented at the SSA hearing. "Social Security disability hearings are not adversary proceedings in which the United States appears as a party to oppose an applicant's claim." *Cohen v. United States*, 571 F. Supp. 589, 595 (S.D.N.Y. 1983), *aff'd*, 729 F.2d 1442 (2d Cir. 1983). "The ALJ is not a counsel representing the Government but is an 'examiner charged with developing the facts.'" *Id.* (holding that SSA finding of disability did not estop the Government in a subsequent personal injury case) (quoting *Richardson v. Perales*, 402 U.S. 389, 410 (1971)).

Second, this Court's reference to the SSA's decision in the background section of a prior opinion does not render the SSA's decision "the law of the case." The law of the case doctrine instructs that a court should not revisit its prior decisions "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). The facts recited in the background section of an opinion are not "decisions." And even if they were, the language in question merely stated the fact that the SSA had found that Mrs. Diawara was disabled, but took no position on whether the SSA was correct in its determination.

Finally, Plaintiffs' argument that Rule 702 precludes Dr. Lefkoe from stating that Mrs. Diawara is not totally disabled is untimely because *Daubert* motions were due on October 15, 2019. Citing Rule 702, Plaintiffs argue that Dr. Lefkoe should not be able to offer expert

5

testimony because his report contradicts the findings of the SSA's hired vocational rehabilitation expert. Plaintiffs further argue that Dr. Lefkoe is not qualified to offer an opinion that Mrs. Diawara is able to return to gainful employment because he is an orthopedic surgeon and not a vocational rehabilitation expert. But Rule 702 challenges are quintessential *Daubert* motions. Rule 702's requirements of qualification, reliability, and fit, are reflective of *Daubert*'s instruction that courts must act "as gatekeepers to exclude unreliable expert testimony." Ad. Comm. Notes to Fed. R. Evid. 702. Plaintiffs' argument that Dr. Lefkoe's opinion is unreliable because it is "unsupported by the facts of this case" is a *Daubert* argument, and is therefore untimely.

But even taking Plaintiff's Rule 702 argument on its merits, it is of no moment that Dr. Lefkoe's testimony may contradict or be in tension with the testimony of the SSA's hired expert. An expert opinion does not become incontrovertible gospel when a government agency relies on it when making a decision. And while Dr. Lefkoe is not a vocational rehabilitation expert, his opinion that Mrs. Diawara is not fully disabled is sufficiently related to his general area of expertise.[3] *See Norris v. Kawasaki Motors Corp., USA,* No. CV H-16-2424, 2018 WL 3729572, at *2 (S.D. Tex. Aug. 6, 2018) ("Expertise in the general area is required, but not expertise in the specialized area directly pertinent to the issues in question."); *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir. 2008) ("We have interpreted Rule 702's qualification requirement liberally. We have held that a 'broad range of knowledge, skills, and training qualify an expert.'" (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (citation omitted))). Accordingly, Plaintiffs' second motion *in limine* is denied.

---

[3] The irony of Plaintiffs' argument that Dr. Lefkoe's orthopedic expertise is broad enough to encompass neurology, but not broad enough to qualify him to offer an opinion on whether Mrs. Diawara's shoulder condition renders her disabled, is not lost on the Court.

### III. Plaintiffs' Motion *in Limine* No. 3 to Preclude Chad L. Staller from Testifying Regarding Mrs. Diawara's Lost Earning Capacity

Plaintiffs' third motion *in limine* argues that Mr. Staller's expert opinion is unreliable because it is based on Dr. Lefkoe's opinion, and that if Dr. Lefkoe's opinion is inadmissible, Mr. Staller's opinion should be as well. But as noted above, this Court has not found that Dr. Lefkoe's opinion is inadmissible, so this argument is unavailing. Plaintiffs' other arguments that Mr. Staller's opinion is contrary to the law of the case and contradict the SSA's decision mirror Plaintiffs' attack on Dr. Lefkoe's opinion, and fail for the same reasons detailed above.

### IV. The Government's Motion *in Limine* No. 1 to Exclude Evidence from Amanda Galbreath's Employment Records

The Government's first motion *in limine* seeks to exclude all evidence from the Defendant's driver's employment records, as well as the testimony of USPS employees Cheryl Monica Thompson and Ryan Eskew, arguing that this evidence is irrelevant and should be excluded under Federal Rule of Evidence 401. Plaintiffs respond that they do not intend to call Ms. Thompson or Mr. Eskew, and that the only evidence from the driver's employment records that they intend to introduce at trial is Exhibit 16.[4] Thus, the Government's motion is moot except as to Exhibit 16, and this opinion will consider only whether this exhibit is relevant.[5]

As both parties note, there will be only two disputed issues at trial: whether the motor vehicle accident caused the Plaintiffs' injuries, and if so, what the appropriate damages are. *See* Doc. No. 46. The Court cannot say, at least in the context of a motion *in limine*, that Exhibit 16 does not have "any tendency to make" it more or less probable that the accident caused

---

[4] In their response, Plaintiffs also reference the Government's failure to file a timely answer. The Court addressed this issue in its October 19, 2020 Order. (Doc. No. 71).

[5] The Government also argues in its reply that the subject file is inadmissible hearsay. Because this argument was raised for the first time in the reply, the Court will not consider it here, but the Government may raise the issue in an appropriate motion at trial.

Plaintiffs' injuries. Thus, the Court denies the Government's first motion *in limine* without prejudice to the Government's ability to raise the issue again in an appropriate motion or objection at trial.

## V. The Government's Motion *in Limine* No. 2 to Exclude Updated Calculations of Plaintiffs' Medical Liens

The Government's second motion *in limine* seeks to exclude evidence or testimony of Plaintiffs' medical bills other than the $18,272.16 in medical liens which Plaintiffs have already produced. Plaintiffs respond that they have been unable to produce final medical liens because Mrs. Diawara's treatment is ongoing, and Plaintiffs are still working to obtain information about the final liens from the insurance carriers. Plaintiffs state that "[t]his process has been considerably hindered by the restrictions of the COVID-19 pandemic placed on businesses nationwide, including the offices of the lien holders in this case, as well as Plaintiffs' ongoing treatment." (Doc. No. 58 at 10).

Federal Rule of Civil Procedure 26 requires plaintiffs to "provide to other parties . . . a computation of each category of damages claimed by the disclosing party . . . including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26 also requires parties to supplement their disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete." Fed. R. Civ. Pro. 26(e)(1).

The Court cannot determine on the record here whether Plaintiffs have complied with Rule 26. Plaintiffs make only vague assertions that they have attempted to obtain the full documentation of the liens, and that the COVID-19 pandemic has frustrated their efforts. Plaintiffs also give no definite timetable for when they will be able to produce the final information on liens. On the other hand, it is plausible that this delay is due entirely to the actions of Plaintiffs' insurance carriers and the COVID-19 pandemic.

8

Accordingly, the Court will deny the Government's motion at this time. Instead of excluding evidence of additional medical bills, Plaintiffs are ordered to timely provide any additional final liens to the Government along with documentation showing that Plaintiffs made appropriate efforts to secure this information sooner and were actually unable to do so. If the Government is not satisfied with Plaintiffs' explanation for the lateness of their supplementary disclosures, the Government may either make another motion *in limine* at trial or may move for leave to file an additional motion on this subject before trial.

## VI. The Government's Motion *in Limine* No. 3 to Exclude Evidence of J.D. and R.D.'s Future Damages

In the parties' briefs, and during the October 13, 2020 Final Pretrial Conference, the parties agreed that there was no disagreement because Plaintiffs do not intend to present evidence of J.D. and R.D.'s future damages. Thus, this motion is moot.

## VII. The Government's Motion *in Limine* No. 4 to Exclude Expert Testimony Outside of the Scope of the Expert's Report

The Government's fourth motion *in limine* asks this Court to issue a blanket order precluding witnesses from offering an opinion outside of the applicable report. The Court will withhold judgment on this portion of the motion and will consider the issue in the context of any appropriate motions made at trial.

However, the Government's motion raises one concrete concern, namely the testimony of Mr. Verzilli. The Government notes that Mr. Verzilli's expert report states, without citation, that Mrs. Diawara is disabled and is unable to perform household services. When asked at his deposition what the basis for his conclusion was that Mrs. Diawara is unable to perform household services, Mr. Verzilli said that his conclusion was based on Mrs. Diawara's SSA record. The Government effectively argues that there are two deficiencies with Mr. Verzilli's testimony: (1) that Mr. Verzilli should have stated in his report what the basis was for his opinion

9

that Mrs. Diawara was unable to perform certain household duties; and (2) that even his "opaque testimony" that he based his opinion on the SSA record is insufficient because the SSA record is hundreds of pages long.[6] The Government argues that allowing Mr. Verzilli to testify regarding damages for lost services would prejudice them because they did not learn until the deposition that he based his opinion on the SSA record, and that even this "citation" gives insufficient notice of the basis of his opinion because the SSA record is hundreds of pages long.

It is, of course, correct to say that the expert report must contain a "complete statement of all opinions to be expressed," and that an expert cannot exceed the scope of his or her report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). However, courts do "not require[] verbatim consistency with the report, but ha[ve] allowed testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008). *See also United States v. Barrett*, 117 F. App'x 216, 219 (3d Cir. 2004) (district court properly admitted expert testimony that was a "logical and reasonable inference from the language contained in the [expert's] report"). The Court will be in a better position at trial to consider whether Mr. Verzilli's testimony falls within these parameters and will therefore deny the Government's motion.

The Court's present decision to not definitively preclude Mr. Verzilli from testifying is reinforced by the purpose of Rule 26(a)(2)(B) which is to "protect opposing parties from unfair surprise." *Vandenbraak v. Alfieri*, No. CIV.A. 01-482KAJ, 2005 WL 1242158, at *3 (D. Del.

---

[6] The Government's brief also alludes to the fact that Mr. Verzilli's report was untimely. However, the Government's brief only mentions this fact in passing, does not state how the four-day delay prejudiced the Government, and the Government completely omitted any reference to the delay in their reply. Because the Government does not assert untimeliness as a separate basis for excluding Mr. Verzilli's report, the Court will not consider it here.

May 25, 2005). *See also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) ("The purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) (alteration and omission in original))). Mr. Verzilli's opinion that Mrs. Diawara is unable to complete household tasks should come as no surprise to the Government because Plaintiffs have asserted this from the earliest stages of this litigation. *See* Doc No. 1 ("Complaint") ¶ 9; Doc. No. 58-4 at SSA-0039-46.

Whether Plaintiffs will be able to prove this element of their case at trial is certainly another matter, but it seems unlikely that Mr. Verzilli's failure to provide a precise citation to evidence within the SSA record or elsewhere has prejudiced the Government's ability to prepare its case that Mrs. Diawara is not unable to perform household tasks. The Court also notes that the Government was able to depose Mr. Verzilli and learn the basis for his opinion well before trial. The availability of expert depositions cannot by itself cure a deficient expert report, but realistically does reduce the prejudice to the opposing party. *See nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011) ("A key consideration when determining whether testimony is beyond the scope of an expert report is whether the objecting party had notice of the subject matter of the testimony based on the contents of the report and elaborations made during any deposition testimony."). The Government's fourth motion *in limine* is therefore denied without prejudice to the Government's ability to raise the issue again in an appropriate motion at trial should Mr. Verzilli's testimony stray unfairly beyond the contents of his report.

11

## VIII. The Government's Motion *in Limine* No. 5 to Exclude Testimony of Dr. James Bonner

Dr. Bonner has treated Mrs. Diawara since January 2019. On June 25, 2019 Plaintiffs sent a letter to the Government stating that Dr. Bonner "is [Mrs. Diawara's] treating provider and [] may be called at the time of trial of this matter as a treater/expert to testify consistent with the substance and contents of the enclosed medical records." Plaintiffs attached Dr. Bonner's treatment records to the letter. On July 2, 2019, the Government responded stating that it did not believe that Plaintiffs' letter complied with Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiffs' counsel responded that Dr. Bonner would testify regarding "the care and treatment [he] provided to Ms. Diawara and its relatedness to the August 13, 2015 motor vehicle collision with your client." After receiving this second email, the Government never moved to compel Plaintiffs to provide a more definite summary.

During Dr. Bonner's August 20, 2019 deposition, Plaintiffs' counsel asked Dr. Bonner whether someone with Mrs. Diawara's medical conditions would require medical accommodations to work, even in a sedentary position, and Dr. Bonner responded that she would require medical accommodations. The parties again deposed Dr. Bonner on June 16, 2020 for a "trial deposition," though neither party describes the contents of this deposition nor includes the transcript as an exhibit to their briefs.

The Government's fifth motion *in limine* seeks to preclude Dr. Bonner from testifying at trial. The Government argues that attaching a treating physician's notes is insufficient to give notice under Rule 26(a)(2)(C), and that Plaintiffs' failure to give sufficient notice of the subjects to be covered in Dr. Bonner's testimony prejudiced them by preventing them from sufficiently preparing for his depositions. Plaintiffs respond that their summary complied with Rule 26(a)(2)(C) and that even if it did not, the Government was not prejudiced because they received

all of Dr. Bonner's treatment records before the August 20, 2019 deposition, and had the benefit of the deposition transcripts when Dr. Bonner was again deposed on June 16, 2020.

The Court agrees that Plaintiffs' "summary" was insufficient to give proper notice under Rule 26. Multiple courts have held that summaries that merely reference a set of produced documents or the witness's prior deposition testimony do not comply with Rule 26. *See, e.g., Castillo v. KMart Corp.*, 2014 WL 585314, at *1 (D.V.I. Feb. 14, 2014) ("Contrary to Plaintiff's assertion, producing [the] records and notes [of Plaintiff's two treating physicians] is not sufficient to satisfy Rule 26(a)(2)(C)'s requirement."); *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-CV-00816-REB-KMT, 2011 WL 1655547, at *3 (D. Colo. Apr. 29, 2011) (summary stating that witness would testify "consistent with all matters raised in his [deposition]" was insufficient); *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-CV-01094-JEC, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013) ("Allowing medical records to be submitted 'in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a "summary." ' " (quoting *Ballinger v. Casey's Gen. Store, Inc.*, No. 1:10–cv–1439–JMS–TAB, 2012 WL 1099823, at *4 (S.D. Ind. Mar. 29, 2012))).

These holdings make eminent sense. The plain text of Rule 26 requires the disclosing party to provide both "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). And while Plaintiffs' description in the follow-up email may have stated the general subject matter of Dr. Bonner's testimony (though even this is debatable), it did not summarize the facts or the opinions that Dr. Bonner was expected to recite. For example, the

summary never stated that Dr. Bonner was expected to testify that Mrs. Diawara would require medical accommodations to work, even in a sedentary position.

While Plaintiffs failed to comply with Rule 26, that does not end the inquiry. Rule 37 provides that failure to comply with Rule 26 will result in exclusion "unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). Neither party's briefs discuss Rule 37, so the Court must conclude whether exclusion is warranted without the benefit of the parties' perspectives.

Courts in this Circuit consider four factors when deciding whether exclusion of evidence is an appropriate sanction:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Courts must also consider "the importance of the excluded testimony." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* (alteration in original) (quoting *Meyers*, 559 F.2d at 905).

The parties' failure to come to a mutually acceptable solution puts the Court in an unenviable position. On the one hand, Plaintiffs violated Rule 26, and it is plausible that the Government experienced some prejudice because of Plaintiffs' failure. It is no answer to say, as

14

Plaintiffs do, that the Government was able to depose Dr. Bonner and "learn[] all about the topics about which he would testify at trial." The purpose of Rule 26 is in part to allow parties to adequately prepare for a deposition. On the other hand, the Government brought much of this prejudice on itself by failing to bring a motion to compel a more definite summary, and waiting to bring this dispute to the Court's attention until shortly before trial. This failure is grounds for denying the Government's motion. *See Kondragunta*, 2013 WL 1189493, at *8 ("[D]efendants could have sought the intervention of the Court. Defendants did not do so, but instead laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer any expert testimony."); *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002) ("We do not commend either party on its efforts to resolve this dispute. [The proponent of the expert] would do well to make sure that, in the future, its Rule 26 disclosures comport with both the spirit and the letter of the rule. Nonetheless, [the opposing party] allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, never moving for an order requiring any more detailed response under Rule 26."). This evidence is important to Plaintiffs' case, and the Court cannot say that Plaintiffs' failure constitutes "willful deception" or "flagrant disregard" of a court order. Accordingly, the Government's fifth motion *in limine* is denied.

### IX. The Government's Motion *in Limine* No. 6 to Exclude Evidence of Mrs. Diawara's Social Security Administration Determination and Hearing

The Government's sixth motion *in limine* seeks to exclude a variety of exhibits related to Mrs. Diawara's SSA hearing and subsequent determination. Plaintiffs reiterate their belief that

the SSA's decision precludes the Government from arguing that Mrs. Diawara is not disabled, and further argue that the evidence's probative value outweighs any prejudicial effect.[7]

The Court finds that any probative value of discussing the SSA's determination or the hearing that lead to that determination is outweighed by the risk of confusion of the issues, undue delay, and wasting time. "The Court does not wish to see this trial descend into an undue examination of the SSA's disability determination." *Kloeckner v. Perez*, No. 4:09CV00804 ERW, 2014 WL 4912129, at *7 (E.D. Mo. Sept. 30, 2014). An SSA determination is of limited probative value for a number of reasons.[8]

First, the SSA employs a different standard. The SSA enters a finding of disability "where [it] has determined that the individual cannot perform 'substantial gainful activity' for a period of not less tha[n] 12 months." *Rafferty v. Erhard*, No. 09CV1019, 2012 WL 3518565, at *2 (W.D.N.Y. July 10, 2012). But in this case, the finder of fact will have to determine not only whether Mrs. Diawara will be disabled for the next year, but whether she will be disabled for the rest of her life.

Second, the evidentiary standards and procedures that govern an SSA determination are not the same as the standards in a federal court proceeding. Administrative agencies like the SSA are not governed by the Federal Rules of Evidence, and the SSA determines only whether

---

[7] Plaintiffs also state that the "law of the case" doctrine precludes the Government from arguing that evidence from the SSA proceedings is inadmissible because the Government referenced one of the SSA's findings in prior briefs and at oral argument. The Court directs Plaintiffs to Section II, *supra*, where the Court discusses the doctrine of the "law of the case." Positions taken by a party in briefing or during oral argument do not constitute the law of the case.

[8] The Court also notes that the SSA's determination is hearsay to which the parties have not identified an applicable exception. But because the issue was not briefed and does not affect the decision, the Court will not discuss it further here.

the applicant is disabled, not the cause of disability, or the proper remedy. *See Orber v. Jain*, No. 10-1674, 2012 WL 1565299, at *2 (D.N.J. May 2, 2012).

Third, introduction of the SSA official's determination as to Mrs. Diawara's disability status would constitute opinion testimony, and Administrative Law Judge Allen is not qualified to render expert medical opinions in this matter. *See* Fed. R. Civ. P. 701-02.

Fourth, and perhaps most importantly, a "hearing on an application for benefits is not adversarial in nature; rather the SSA assists an applicant in proving his claim." *See Ianscoli v. Astrue*, No. 10–12000, 2011 WL 4359978, at *2 (E.D. Pa. Aug. 25, 2011). Because the SSA hearing is non-adversarial, there was no party before the SSA who had an interest in opposing a finding of disability. This country's justice system is built on the premise that an adversarial system of justice is the best tool for ascertaining the truth. A "bottom line" conclusion from an *ex parte* proceeding is of dubious relevance, and litigating the extent to which administrative law Judge Allen adequately weighed the evidence would quickly devolve into a "case within a case." *See Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 933 (7th Cir. 2001) (Esterbrook, J., concurring) (allowing parties to litigate the significance of an SSA determination "would send district courts (and juries) on a lot of byways"). It is far better to merely allow the parties to present their cases, and to allow the finder of fact to decide the issue anew based on all of the evidence, without attempting to weigh the significance and trustworthiness of an administrative law judge's opinion, or to guess and then litigate the admissibility of material possibly used by the administrative law judge.

However, this decision does not extend to possible proper use of the SSA's decision to offset any award for lost earnings. Nor does this opinion extend to a final ruling on the *evidence* submitted to the SSA. In order to ensure clarity as to the scope of the Court's opinion, the Court

17

will comment briefly on the admissibility of specific exhibits mentioned in the Government's brief. Plaintiffs' Exhibits 169 and 170 are excluded. Plaintiffs' Exhibit 149 is not excluded, as it constitutes evidence presented to the SSA rather than the SSA's determination. While the Court trusts that the parties will carefully read the scope of this order to prevent unnecessary disputes at trial, the Court will consider appropriate motions on the admissibility of other exhibits implicated by this opinion on a case to case basis at trial. For the reasons stated above, the Court grants in part the Government's sixth motion *in limine*.

## X. The Government's Motion *in Limine* No. 7 to Exclude Evidence of Past Medical Expenses Billed

The Government's seventh motion *in limine* seeks to preclude evidence of the amounts billed for Mrs. Diawara's medical procedures, and require Plaintiffs to only introduce evidence of the final amounts paid. Plaintiffs respond that while they are waiting on the documents as to the final liens which will state the amounts actually paid, they agree that they are entitled only to the amounts paid, not the amounts billed. Because the parties agree on this point, the Court denies the Government's seventh motion *in limine* as moot.

## CONCLUSION

For the reasons outlined above, and subject to the conditions provided in this opinion, the Court denies all three of the Plaintiffs' motions *in limine*, denies the Government's first, second, fourth, and fifth motions *in limine*, denies as moot the Government's third and seventh motions *in limine*, and grants in part the Government's sixth motion *in limine*.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

18